SPECTOR, Chief Judge.
Petitioner has filed an original mandamus action in this court by which he seeks to compel Richard (Dick) Stone as Secretary of State to accept and file petitioner’s qualifying papers to run for Circuit Judge, Seventh Judicial Circuit, Putnam County Resident Group, in the impending judicial elections.
*518 We issued the alternative writ and a return has been filed by respondent. Because the election is to be held soon, we have dispensed with oral argument pursuant to Florida Appellate Rule 3.10, 32 F. S.A.; and since there are no factual disputes, we can resolve the issues raised on the basis of the pleadings filed herein.
Mandamus is the proper remedy Jo coerce a public official to perform a ministerial duty which the official is required to perform by law. If the act sought to be coerced is discretionary or involves the exercise of judgment by the officer, mandamus will not lie. See State ex rel. Cherry v. Stone, Fla.App., 265 So.2d 56, filed August 4, 1972.
Although we held that mandamus would not lie in the Cherry case, supra, to coerce the Secretary of State to remove a candidate’s name from the list of duly qualified candidates for a legislative office, we so held because the defect in the candidacy there involved was a latent defect. It did not appear on the face of the qualifying papers so that the official could not tell of the disqualifying defect from a perusal of the qualifying papers. Moreover, the relief sought in Cherry was cognizable by injunction since a restraining order against the official was the object of the action. However, where there is a defect or insufficiency in a candidate’s qualifying papers, such a patent defect may be reached by mandamus for in such cases the official need only to examine the papers to determine whether they are proper in form. The duty involved in such examination is ministerial in nature and thus may be reached by mandamus.
We deem it necessary to emphasize the distinction between the case at bar and the Cherry case, supra, because although both are mandamus actions, in one case we denied relief and in the other we grant it. Thus, whether coercive relief is to be granted depends on the nature of the function sought to be coerced. It is not dependent merely on whether it is a case “involving” a candidate’s qualification for office.
The petitioner in the instant case avers that he is a resident of Putnam County, Florida, and in all respects is eligible to run for and serve in the office of Circuit Judge of the Seventh Judicial Circuit of Florida. On July 24, 1972, he submitted to the respondent all of the necessary qualifying papers to run for the office of Circuit Judge of the Seventh Judicial Circuit. Included among the said papers is the “Oath of Candidate” tendered by petitioner which states that he is a candidate for the office of “Circuit Judge, Seventh Judicial Circuit, Putnam County Resident Group”. The respondent refused to accept petitioner’s qualifying papers contending that no such described or designated group existed because Section 100.071, Florida Statutes, F.S. A., provides that where two or more similar offices are to be filled in the same election, the names of candidates are to be placed or printed upon the ballots or voting machines in groups. The respondent advised petitioner by letter that his records indicated that there were seven judgeships to be filled by election in the Seventh Judicial Circuit and that said offices were designated by him as groups one through seven. Petitioner was afforded the opportunity to designate the judicial office he was seeking in terms of the numbered groups one through seven but apparently declined to do so and brought this action to compel the respondent to accept his qualifying papers as submitted.
The state laws relating to elections make the Secretary of State the chief elections official of Florida. Section 100.071, Florida Statutes, F.S.A., provides as follows:
“100.071 Grouping of candidates on primary ballots.—
(1) (a) Where two or more similar offices are to be filled in the same election, the names of candidates are placed or printed upon the ballot or voting machine in groups; that is, if two or more places on the supreme court, or two or *519 more members of the legislature from the same election district are to be elected, then the candidates’ names are placed or printed on the ballot or voting machines in groups, such as group 1, group 2, group 3 as the case may be.
(b) The name of the office shall be printed over each numbered group and each numbered group clearly separated from the next numbered group, the same as in the case of single offices, so as to emphasize the necessity of voting for one candidate in each of the numbered groups.
(2) Nominees of recognized political parties chosen in primaries are in the same numbered group on the general election ballot in which their names appeared on the primary election ballot.”
Chapter 72-402, Laws of Florida, Acts of 1972, effective concurrently with the revised Article V of the State Constitution, provides that there shall be nine circuit judges in the Seventh Judicial Circuit. That act also provides that all such judges shall be elected in the impending nonpartisan elections in 1972 except those judges who automatically become circuit judges pursuant to Section 20(d) (2) of Senate Joint Resolution 52-D, Article V. It seems to be agreed that two judges in that circuit shall become circuit judges automatically, thus leaving seven circuit judges to be elected in the 1972 nonpartisan elections.
Section 4 of Chapter 72-404 which amends Sections 26.02, Florida Statutes, relating to the territorial composition of the several judicial circuits, provides by Section 26.02(7), as amended, the following:
“(7) The seventh circuit is composed of Flagler, Putnam, St. Johns and Volusia Counties. No four judges shall reside in the same county unless the total number of judges in the circuit shall exceed five in number, in which case one judge shall reside in Flagler County, one judge shall reside in Putnam County, one judge shall reside in St. Johns County and three judges shall reside in Volusia County. There shall be no residence requirement for any other judges in the circuit.”
Petitioner contends that the requirement contained in the above statute that certain of the circuit judges shall reside in the named counties as designated by the legislature places a mandatory duty upon the respondent to so designate the various groups of candidates for office in the Seventh Judicial Circuit so as to reflect in said groupings the county in which the successful candidate will reside upon his assuming the duties of office following election.
In the return filed by respondent’s counsel, reliance is placed upon Section 101.254, Florida Statutes, F.S.A., which provides:
“When an office requires the nomination of more than one candidate, as many groups shall be numerically designated as there are vacancies to be filled by nomination, each candidate shall indicate the group in which he desires his name to appear on the ballot.”
Respondent thus contends that his duties under the foregoing statutes have been fully met by the designation of the seven judicial vacancies to be filled in the Seventh Circuit as numerical groups one through seven. When respondent refused to accept and returned petitioner’s qualifying papers, respondent in effect said that petitioner had to qualify for and run in a numerically designated group which made no reference to the county in which the particular circuit judge shall reside. Petitioner’s insistence however that he be permitted to run in a group designated as the Putnam County Resident Group, by whatever number, arises from petitioner’s contention that Section 26.02(7), as amended and quoted above, requires the grouping of candidates by the respondent in such a manner as to reflect the resident requirements of the statute. We think the petitioner is correct. Merely grouping the *520 candidates for office of Circuit Judge in the Seventh Judicial Circuit by numerical designation only falls short of the statutory requirements found in Section 26.02 (7), Florida Statutes, F.S.A. It is noted that out of the twenty judicial circuits provided by Section 26.02 for the entire State of Florida, only two circuits, the fifth and seventh, contain any legislatively defined residence requirements. The requirement that a judicial officer reside in a stipulated county is not a hollow one. It is a requirement made not for the convenience of the judge, but rather for the convenience of the people in the county. The direction found in the statute that one of the circuit judges shall reside in Putnam County was not intended for the convenience of anyone but for the benefit of the people in the county. The object of the provision that the judge reside in the named county is to compel the officer to maintain his residence where litigants might expeditiously and with as little expense as possible have access to him for the transaction of official business. See People ex rel. Post v. Owers, 29 Colo. 535, 69 P. 515 (1909). By inclusion of specific residence requirements as to the named counties in the Seventh Circuit, the legislature was obviously attempting to address itself and make provision for its understanding of the case loads existing in the several counties within the circuit and sought specifically to provide that at least one judge would reside and thus be available in Flagler, St. Johns and Putnam Counties and three judges in Volu-sia County.
Petitioner’s insistence that the county of residence must be designated for at least six of the candidate groups in that circuit gains quick agreement when we ask ourselves which of the seven candidates who are elected shall reside, as the statute requires, in St. Johns County. Which three shall reside in Volusia? And, which in Putnam? And who shall have the power to say, “Judge ‘X’, you shall be the resident Circuit Judge of Putnam County and you, Judge ‘Y’, shall reside in Flagler County ?”
 The law appears to be well settled that residence within a district over which the jurisdiction of an office extends may be required by statute and when it is so required, the requirement is mandatory. 67 C.J.S. Officers § 15. By requiring specific counties of residence for a minimum number of the judges within the Seventh Circuit, the legislature has imposed a mandatory residence requirement which must be adhered to and which must be reflected in the candidate grouping system devised by election officials so that the candidates as well as the electorate will know which particular office is being sought by which particular candidate. If done in that manner, no question will arise as to which judge shall fulfill which residence requirement.[1] Accordingly, we hold that petitioner was correct in his contention that one of the groups for the office of Circuit Judge in the Seventh Judicial Circuit should be identified so as to reflect the office of Circuit Judge, Putnam County Resident Group. The respondent was required as a ministerial duty to classify candidate groups so as to reflect statutory requirements of Section 26.02(7) and mandamus lies to compel such act. Additionally, mandamus compels the respondent to accept qualifying papers from the petitioner since they are in a form which is responsive to the requirements of the law as manifested in Section 26.02(7), Florida Statutes.
By his return, the respondent advises that he has numerically designated the seven offices as groups one through seven and that the following candidates have *521 qualified in the groups as designated by the respondent:
Group 1 Howell W. Melton
Group 2 Warren Cobb
Charles Julian Luke Group 3 W. L. Wadsworth
Group 4 Leon F. Stewart
Group 5 james T. Nelson
Group 6 J. Robert Durden
Group 7 Robert H. Matthews
Anthony J. Grezik
The time for designating the offices which are to be filled in the coming election and the designation of groups therefor where two or more similar offices are to be filled has passed. The groupings promulgated by the respondent fail to reflect the county resident groups for which the candidates seek election in conformance with Section 26.02(7), Florida Statutes. While we are reluctant at this late date to interfere with the orderly operation of the elective process by those primarily responsible for its administration, we deem it necessary to do so to the extent necessary to assure the candidates for office of judge in the Seventh Circuit that they may reside in the county in which they anticipated to reside as they perform their official duties within the circuit and at the same time provide the electorate of the Seventh Circuit with the means whereby they may elect from among the candidates for circuit judge the one or ones, as the case may be, who is to reside in the several counties comprising the judicial circuit in accordance with the residential scheme devised by the legislature for judges of that circuit.
Heretofore, the Seventh Circuit has been entitled to only five circuit judges. No specific residential requirements are found in the statutes concerning the residence of the judges of the Seventh Circuit except the provision that no four judges shall reside in the same county unless and until the total number of judges in the circuit shall exceed five in number, after which one judge shall reside in Flagler County, one judge shall reside in Putnam County, one judge shall reside in St. Johns County and three judges shall reside in Volusia County, with no residence requirements for any additional judges. See Section 26.08, Florida Statutes, 1971. That section, of course, will stand repealed by operation of Chapter 72-404, Laws of Florida, Acts of 1972, and the judicial reorganization act. The residential requirements of Section 26.08, Florida Statutes, 1971, were inoperative because the number of judges in that circuit did not exceed five. That the residence requirement of Section 26.08 relating to the Seventh Circuit was inoperable because there were only five judges perhaps explains why in past elections no designation of county resident groups were made by the respondent in the numerical group designations. According to the tabulation of official votes case in the general election of 1966 issued and compiled by the Office of the Secretary of State, the five circuit judges for the Seventh Judicial Circuit were grouped numerically as follows:
Group 1 Howell W. Melton
Group 2 Robert H. Wingfield
Group 3 W. L. Wadsworth
Group 4 Horace D. Riegle
Group 5 James T. Nelson
The impending election, of course, is the first for circuit judges following the 1966 elections. Of the five circuit judges elected in 1966, three are seeking re-election in 1972. These are Judge Melton, listed by the respondent as Group 1 in 1966 and 1972; Judge Wadsworth, Group 3 in 1966 and 1972; Judge Nelson, Group 5 in 1966 and 1972. Judge Melton resides in St. Johns County and it is presumed that his qualification for re-election in 1972 is for the St. Johns County Resident Group provided for in Section 26.02(7), Florida Statutes. The respondent is hereby ordered to provide for the labeling of Group 1 so as to identify that group as the St. Johns County Resident Group. Judge Wadsworth resides in Flagler County and we presume that he likewise intended to run for the *522 Flagler County Resident Group. The respondent is ordered to provide for the labeling of Group 3 so as to reflect that it is the Flagler County Resident Group. Judge Nelson resides in Volusia County and it is presumed that he intended to run for one of the three Volusia County Resident Groups provided by the statute. The respondent is ordered to label Group 5 so as to reflect that it is a Volusia County Resident Group. Judge Wingfield was elected in Group 2 in 1966 but has not qualified to seek re-election. Judge Wingfield resides in Volusia County as do the two persons who have qualified with the respondent to run in the said Group 2 to succeed Judge Wingfield. These are Honorable Warren Cobb and Honorable Charles Julian Luke. It is presumed that Mr. Cobb and Mr. Luke, both of whom reside in Volusia County, seek election to one of the three Volusia County Resident Groups provided by the statute. The respondent is ordered to provide for the labeling of Group 2 so as to identify that group as the Volusia County Resident Group. Judge Riegle is not seeking reelection. He was elected in 1966 in Group 4. Judge Riegle resides in Volusia County. Honorable Leon F. Stewart is the only candidate who qualified'in Group 4 for the 1972 elections, and he resides in Volusia County as did his predecessor in Group 4. It is presumed therefore that Mr. Stewart seeks one of the three Volusia County Resident Groups provided by statute. The respondent is ordered to provide for the labeling of Group 4 so as to identify that group as the Volusia County Resident Group.
The above disposes of the first five groups and provides for the proper county resident designations. In addition to the foregoing five groups, two more circuit judges will be elected in 1972. Comparable groups were not elected for that circuit in 1966 or earlier simply because fewer judges were provided. The two additional judgeships in essence are new. None of those who held the office of circuit judge who were elected in 1966 resided in Putnam County. By operation of Section 26.-02(7), a Putnam County Resident Group is mandated. Logic requires that either Group 6 or Group 7 must be designated as the Putnam County Resident Group. Accordingly, the respondent is ordered to designate Group 6 as the Putnam County Resident Group and further is ordered to accept petitioner’s qualifying papers as a candidate for Circuit Judge in Group 6, Putnam County Resident Group. It is ordered that Group 7 be designated as an at-large resident group. It is further ordered that the respondent permit those persons who have heretofore qualified to run in Groups 6 and 7 to file with him in writing within five days from the date of this opinion a designation stating in which of the groups — Group 6, Putnam County Resident Group, or Group 7, unidentified resident group — they wish to qualify as candidates for the office of circuit judge.
Respondent is further ordered and directed to file in this cause within fifteen days from the date of this opinion his certificate showing a full and complete compliance with the directions contained herein.
Petition for peremptory writ of mandamus is granted and the peremptory writ of mandamus is issued in accordance with the foregoing opinion.
JOHNSON, J., concurs.
WIGGINTON, J., concurring specially.

. The residency requirement found in the statute refers to residency at the time the office is assumed by the judge. See Attorney General’s Opinion 072-224, dated July 17, 1972.