345 So.2d 330 (1977)
William SADOWSKI, Appellant,
v.
Robert SHEVIN, Etc., et al., Appellees.
No. 49769.
Supreme Court of Florida.
March 10, 1977.
Talbot D'Alemberte, of Steel, Hector & Davis, Miami, for appellant.
Robert L. Shevin, Atty. Gen., James D. Whisenand, Deputy Atty. Gen., and Michael M. Parrish and Barry Silber, Asst. Attys. Gen., for appellees.
Jay Hershoff, of Hershoff, Smith, Berlinsky & Lieberman, Miami and Sheridan K. Weinstein, of Papy, Levy, Carruthers & Poole, Coral Gables, for intervenor.
KARL, Justice.
This cause is before us on direct appeal from a decision of the District Court of Appeal, Third District, upholding the constitutionality of Section 106.15(1), Florida *331 Statutes, thereby vesting jurisdiction in this court pursuant to Article V, Section 3(b)(1), Florida Constitution.
The appellant, William Sadowski, became a candidate for a seat in the Florida House of Representatives by announcing his candidacy, seeking support of citizens, receiving campaign contributions and establishing a campaign account.[1] The legislative seat he opted to seek was in District 113, then occupied by an incumbent state representative. Sadowski could not file his qualification papers or pay his qualification fees and party assessments until noon on July 6, 1976, the sixty-third day prior to the first primary,[2] which was after the scheduled adjournment of the 1976 regular session of the Florida Legislature.
He was desirous of spending campaign treasury funds prior to the qualification date, including funds for media advertising and printing, but was prohibited from doing so by Section 106.15(1), Florida Statutes, which provides:
"106.15 Certain expenditures prohibited

(1) No person, candidate, political party, political committee, or person acting on behalf of another shall, prior to qualifying for office, directly or indirectly in furtherance of any candidacy make any use of:
(a) Advertising on radio or television;
(b) Advertising in newspapers, magazines, or periodicals;
(c) Advertising on billboards, banners, or streamers;
(d) Advertising on campaign literature or any other printing; or
(e) A rented hall in which to address the public."
Contending that Section 106.15(1), Florida Statutes, would abridge his constitutional right to speak on public issues of the day, including the activities of the Florida Legislature then in session, he filed a complaint for injunctive and declaratory relief seeking to have declared unconstitutional the section of the statute which proscribed such activities.
Ronald S. Lieberman, a candidate for the same elective office who was allowed to intervene in the trial court, contended that, in accordance with the dictates of Section 106.15(1), Florida Statutes, his campaign was geared to July commencement and that he would be substantially disadvantaged by the granting of Sadowski's request for preliminary relief.
The trial judge denied appellant's motion for preliminary injunction and found that granting of the motion would disturb the status quo now existing under the Florida election laws and that appellant had been guilty of laches in challenging the act.
Interlocutory appeal was taken to the District Court of Appeal, Third District, from this order denying preliminary relief. The district court initially discussed the broad discretion of the trial judge in granting, denying, dissolving or modifying injunctions and determined that sub judice the trial judge had not abused his discretion since granting of the requested relief would have caused substantial turmoil in the upcoming fall election and campaign. Finding it necessary to resolve the constitutional issue because it concluded that, if Section 106.15(1), Florida Statutes, is unconstitutional, then regardless of the above grounds, appellant's request for injunctive relief should have been granted, the district court held Section 106.15(1), Florida Statutes, constitutional as a reasonable restriction on First Amendment free speech rights to preserve the integrity of the electoral process and to insure free and fair elections.
Although the questions raised in this cause have become moot with the passing of the qualifying time and the election, we feel constrained to retain jurisdiction and resolve the question as to the constitutionality vel non of Section 106.15(1), Florida Statutes, since this is a matter of great public importance in the administration of the law and is of general interest to the *332 public. Cf. DeHoff v. Imeson, et al., 153 Fla. 553, 15 So.2d 258 (1943), Tau Alpha Holding Corporation, et al. v. Board of Adjustments of City of Gainesville, et al., 126 Fla. 858, 171 So. 819 (1937), Pitt v. Belote, et al., 108 Fla. 292, 146 So. 380 (1933), State ex rel. Railroad Com'rs v. Southern Telephone & Construction Co., 65 Fla. 67, 61 So. 119 (1913), Clark v. State, 122 So.2d 807 (Fla.3rd DCA, 1960), De Coningh v. City of Daytona Beach, 103 So.2d 233 (Fla.1st DCA, 1958).
Indisputably, the Legislature is charged with the responsibility and authority of regulating the election process to protect the integrity of that process and to insure free and fair elections. Treiman v. Malmquist et al., 342 So.2d 972, filed February 17, 1977, Danciu v. Glisson, 302 So.2d 131 (Fla. 1974), Bodner v. Gray, 129 So.2d 419 (Fla. 1961). We hold, however, that the Section 106.15(1) regulation of election activities is a restraint of free speech and a restriction on the quantity of a candidate's communication and diversity of political speech contrary to the dictates of the Supreme Court of the United States in Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). It effectually constitutes a limitation on campaign spending.
The Legislature intended 106.15(1) to limit campaign spending by confining certain major expenditures to a designated and limited time period. That intention is manifested in the placement of the section in the chapter of the statutes regulating campaign financing and by the legislative titles of the act as well as the specific section.[3]Berger v. Jackson, 156 Fla. 251, 768, 23 So.2d 265 (1945).
The changes in Section 106.15(1) included in Chapter 74-200, Laws of Florida,[4] do not detract from the clear legislative intent nor do they transform the prohibition on campaign spending into a constitutionally acceptable act. The statute, as it is before us, denies to candidates their fundamental right to speak to political issues and to advocate their candidacy by making use of advertising in various effective media and in rented halls until they are within the described political season. The fact that they may spend unlimited amounts for such purposes in the designated time period does not cure the infirmity nor make the speech restraints any more acceptable.
Determining portions of the Federal Election Campaign Act of 1971, as amended in 1974, limiting political campaign expenditures, to be unconstitutional infringements on the First Amendment right of free speech because they constituted restraints on the quantity and diversity of political speech, the United States Supreme Court, in Buckley v. Valeo, supra, explicated:
"The Act's contribution and expenditure limitations operate in an area of the most fundamental First Amendment activities. Discussion of public issues and *333 debate on the qualifications of candidates are integral to the operation of the system of government established by our Constitution. The First Amendment affords the broadest protection to such political expression in order `to assure the unfettered interchange of ideas for the bringing about of political and social changes desired by the people.' Roth v. United States, 354 U.S. 476, 484 [77 S.Ct. 1304, 1308, 1 L.Ed.2d 1498] (1957). Although First Amendment protections are not confined to `the exposition of ideas,' Winters v. New York, 333 U.S. 507, 510 [68 S.Ct. 665, 667, 92 L.Ed. 840] (1948), `there is practically universal agreement that a major purpose of th[e] Amendment was to protect the free discussion of governmental affairs ... of course includ[ing] discussions of candidates...' Mills v. Alabama, 384 U.S. 214, 218 [86 S.Ct. 1434, 1437, 16 L.Ed.2d 484] (1966). This no more than reflects our `profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open,' New York Times Co. v. Sullivan, 376 U.S. 254, 270 [84 S.Ct. 710, 721, 11 L.Ed.2d 686] (1964). In a republic where the people are sovereign, the ability of the citizenry to make informed choices among candidates for office is essential, for the identities of those who are elected will inevitably shape the course that we follow as a nation. As the Court observed in Monitor Patriot Co. v. Roy, 401 U.S. 265, 272 [91 S.Ct. 621, 625, 28 L.Ed.2d 35] (1971), `it can hardly be doubted that the constitutional guarantee has its fullest and most urgent application precisely to the conduct of campaigns for political office.'
"... In contrast to O'Brien [United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672], where the method of expression was held to be subject to prohibition, Cox [Cox v. Louisiana, 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487], Adderley [Adderley v. Florida, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149], and Kovacs [Kovacs v. Cooper, 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513] involved place or manner restrictions on legitimate modes of expression  picketing, parading, demonstrating, and using a soundtruck. The critical difference between this case and those time, place, and manner cases is that the present Act's contribution and expenditure limitations impose direct quantity restrictions on political communication and association by persons, groups, candidates, and political parties in addition to any reasonable time, place, and manner regulations otherwise imposed.
"A restriction on the amount of money a person or group can spend on political communication during a campaign necessarily reduces the quantity of expression by restricting the number of issues discussed, the depth of their exploration, and the size of the audience reached... .
.....
"... In the free society ordained by our Constitution it is not the government but the people  individually as citizens and candidates and collectively as associations and political committees  who must retain control over the quantity and range of debate on public issues in a political campaign."
The decision as to which contender for a particular political office should be entrusted with the power of that office rests exclusively with the people. They are entitled to all the information that each candidate can provide about himself, his opponent and their respective positions on the relevant political issues. The entire process is hampered if the information is restricted or unavailable. The public's "need to know" is most critical during an election campaign.
Appellees posit that Section 106.15(1), Florida Statutes, advances an important governmental interest in protecting the public from frivolous or fraudulent candidacies and in avoiding deception and even frustration in the democratic process by limiting the use of campaign advertising to serious candidates. This act, however, does not necessarily effect the result suggested *334 by appellees since nothing in the act prevents an individual from making his candidacy known to the people through methods of communication other than those specified by this statute. Moreover, if the people are given the necessary information, they will fulfill their responsibility to sort the candidates and separate those who are serious from those who are engaged in political frivolity.
Accordingly, we find Section 106.15(1), Florida Statutes, unconstitutionally violative of freedom of speech rights in that it is designed primarily to be a limitation on the quantity of political speech. Therefore, the decision of the District Court of Appeal, Third District, is reversed, and the cause is remanded for further proceedings consistent herewith.
It is so ordered.
OVERTON, C.J., and BOYD, ENGLAND, SUNDBERG and HATCHETT, JJ., concur.
NOTES
[1] Section 106.011(1)(b), Florida Statutes.
[2] Section 99.061(1), Florida Statutes.
[3] Chapter 73-128, Laws of Florida, was entitled "AN ACT relating to elections; regulating campaign finances; ... ." Section 15, Chapter 73-128, Laws of Florida, was the predecessor of the present Section 106.15, and it was labeled by the Legislature "section 15. certain expenditures prohibited. ." Chapter 74-200, Section 9, amends Section 106.15(1). The chapter title is "AN ACT relating to elections; revising various subsections of the campaign financing chapter of the election code; . .," and the particular paragraph is, "Section 9. Subsection (1) of sec. 106.15, F.S., 1973, is amended to read: 106.15 Certain expenditures prohibited. ."
[4] Chapter 74-200, Laws of Florida, amended the statute as follows:

"(1) No person, candidate, political party, political committee, or person acting on behalf of another shall, prior to qualifying for office, directly or indirectly make any expenditure in furtherance of any candidacy for the following purposes make any use of:
(a) Advertising on radio or television;
(b) Advertising in newspapers, magazines, or periodicals;
(c) Advertising on billboards, banners, or streamers;
(d) Advertising on campaign literature or any other printing; or
(e) Renting of hall in which to address the public.
However, a person, candidate, political party, political committee, or person acting on be half of another shall be permitted to reserve, but make no use of, advertising time and space prior to qualifying for office."