Burke, J.
A single question, one of first impression, is presented by the appeal: whether section 2 of article I of the New York State Constitution which relates to the waiver of jury trials in certain criminal cases is self-executing or is dependent upon implementing legislation. Both courts below in consummately well-expressed opinions have held the pro *688 vision effective despite the absence of legislation on the subject. Their conclusion, in our opinion, should be affirmed.
In an earlier proceeding defendant was brought to trial on on indictment charging him with grand larceny in the second degree. At the outset and after consultation with his attorney, defendant submitted a written stipulation signed by both defendant and his counsel whereby he purported to waive his right to a jury trial. The statement read: “ Pursuant to Article one, Section two of the Constitution, I Valentine J. Carroll, the defendant under indictment 2061, 1955 do hereby waive jury trial [sic] on this indictment. I do so after consultation with my counsel Leon Kesner, and with full understanding of the rights and privileges which I waive herewith.” Over objection by the assistant district attorney who argued that the constitutional provision had not received the necessary legislative implementation, the court accepted the stipulation and proceeded to hear the case without' a jury. No question was raised as to the time, form or contents of the waiver.
With the acknowledged intention of testing the court’s power to accept defendant’s waiver, the charge was re-presented to the Grand Jury which found a second indictment upon the same facts and for the same crime. At his arraignment defendant pleaded not guilty and moved to dismiss this second indictment on the ground of former jeopardy. The motion was granted.
The appeal is from the Appellate Division’s unanimous affirmance of the order of dismissal entered upon the motion.
Section 2 of article I reads: 1 ‘ Trial by jury in all cases in which it has heretofore been guaranteed by constitutional provision shall remain inviolate forever; but a jury trial may be waived by the parties in all civil cases in the manner to be prescribed by law. The legislature may provide, however, by law, that a verdict may be rendered by not less than five-sixths of the jury in any civil case. A jury trial may be waived by the defendant in all criminal cases, except those in which the crime charged may be punishable by death, by a written instrument signed by the defendant in. person in open court before and with the approval of a judge or justice having jurisdiction to try the offense. The legislature may enact laws, not inconsistent herewith, governing the form, content, manner and time of presentation of the instrument effectuating such waiver.”
*689 The most compelling criterion in the interpretation of an instrument is, of course, the language itself. Particularly is this so in the case of a constitutional provision like the one before us where the writing is the deliberate product of a group of men specially selected for and peculiarly suited to the task of its authorship. It is obvious good sense, under such circumstances, to attribute to the provision’s authors the meaning-manifest in the language they used. When this language is clear and leads to no absurd conclusion there is no occasion, and indeed it would be improper, to search beyond the instrument for an assumed intent (Latting v. Cordell, 197 Okla. 369; State ex rel. Trent v. Sims, 138 W. Va. 244; Rules of Interpretation, McKinney’s Cons. Laws of N. Y., Book 2, part 1, Constitution, p. 5, and cases there cited).
Here the language of the constitutional provision speaks its meaning with sufficient clarity to make further inquiry unnecessary. In pertinent part section 2 states flatly that ‘1 A jury trial may be waived by the defendant in all criminal cases, except those in which the crime charged may be punishable by death ”. Following directly upon the affirmative grant of this right is a specification of the form in which the waiver is to be made: “by a written instrument signed by the defendant in person in open court before and with the approval of a judge or justice of a court having jurisdiction to try the offense.” Aside from the prescribed form no contingencies or conditions precedent to the effectiveness of the grant of right are mentioned. Nothing in the language indicates that legislation would be imperatively necessary to give the right effect and the very fact that the writers did assume to supply the essential details indicates that supplementary legislation was not relied upon.
This impression is sharpened by the wording of the next sentence: “The legislature may enact laws, not inconsistent herewith, governing the form, content, manner and time of presentation of the instrument effectuating such waiver.” (Emphasis supplied.) The use of the permissive “ may ” signifies, unless that word is to be denied its plain meaning, that supplementary legislation, though permitted for the purpose of procedural refinement, was not deemed essential. The careful insertion of the phrase “not inconsistent herewith” was designed to make it clear that the broad scope of the waiver *690 right, extending by virtue of the main provision to all non-capital criminal cases, was in no way to be encroached upon by subsequent legislation.
The contrast within article I between the references to civil and criminal cases is the final confirmation. As to civil cases “ a jury trial may be waived by the parties * * * in the manner to be prescribed by law ”. No effort was made to detail the method or procedure of implementation. That entire subject was left to the Legislature. Most likely the total absence of specifics indicated the delegation of power not to the public directly but merely to the Legislature (e.g. State ex rel. Burnett v. Deck, 106 Kan. 518; Board of Educ. v. Minor, 23 Ohio St. 211) and its only effect was to remove the constitutional bar to the Legislature’s authority to enact a right to waive in civil cases. The same can be said for the sentence following which reads: “ The legislature may provide, however, by law, that a verdict may be rendered by not less than five-sixths of the jury in a civil case ”. As to noncapital criminal cases, however, the language granting the right to waive was, as pointed out, by no means merely permissive to the Legislature. It states affirmatively that a defendant in these cases may waive; not that the Legislature may provide for waiver. The only permissive aspect to the provision is the delegation to the Legislature permitting them to supplement the waiver right by additional procedural requisites.
If we were to decide that the provision is not clear on its face and that recourse must be had to the traditional principles of construction, it would only serve to fortify the conclusion already reached.
Assuming the necessity of a construction, the process in this case would have to start with the presumption that the provision is self-executing. Originally, when the Federal Constitution and the first State Constitutions were written, their clear purpose was to establish a broad framework of basic principles within which the Nation and States should function. Actual administration and implementation was, in large part, left to departments created by the Constitution and was not attempted in those instruments. Since then, and particularly during the past 50 years, the function of the various Constitutions has evolved into one more like that of a legislative body. Construction of constitutional provisions has varied accordingly. *691 Whereas initially the presumption was that provisions in a Constitution were merely general directions and that legislation was necessary to effectuate them, it is now presumed that constitutional provisions are self-executing (State ex rel. Russell v. Bliss, 156 Ohio St. 147; Morgan v. Board of Supervisors, 67 Ariz. 133; State ex rel. Noe v. Knop, 190 So. 135, 142-143 [La. Ct. App.]; 11 Am. Jur., Constitutional Law, § 72, p. 689, and cases there cited). The approach is especially applicable here where the intent of the provision’s drafters to make specific and immediately effective the right to waiver is evidenced by the insertion of operational details.
This presumption, coupled with the history of the section’s origins, points clearly to the conclusion that the provision, insofar as it related to criminal cases, was intended to be self-executing.
Because the history, debates and discussions have been so thoroughly reported and analyzed by the courts below, we pause only to capsulize those portions which seem particularly persuasive.
A constitutional amendment prior to the instant one was adopted by the Legislatures of 1935 and 1937, approved by the People and became effective on January 1, 1938. This amendment, recommended by the Judicial Council, states: “ a jury trial may be waived in the manner to be prescribed by law by the parties in all civil cases and by the defendant in all criminal eases, except those in which the crime charged may be punishable by death ”. It will be noted that the form of the grant in this amendment was the same as that in the present one except insofar as it relates to criminal cases. As indicated above the form in the original amendment, the same as to both civil and criminal cases, was probably not self-executing. It seems clear that its sponsors, at least, recognized a need for implementing legislation (see Second Eeport of Judicial Council, 1936, p. 97). The present provision is markedly different. Instead of placing criminal cases in the same class with civil cases wherein waiver could be effectuated only “ in the manner to be prescribed by law ”, the two were deliberately separated. As to criminal cases details were supplied whereby the right might become immediately effective.
The history of these procedural requirements is significant. The Judicial Council, in its reports of 1936 and 1937, had sug *692 gested that the method of waiver, whether it should be made in writing, etc., should be left to the Legislature. The suggestion was rejected and the amendment which was finally adopted incorporated these matters. In the opinion of Judge Seabs, Chairman of the Constitutional Convention’s Judiciary Committee which proposed the amendment ultimately adopted, the insertion of these details made the provision “complete”. Thus, in the course of a discussion of the matter, he was asked:
“ Is it intended that the Legislature may further develop this proposal by appropriate legislation or is it deemed to bo complete as it stands? ”
He answered: “ It was originally deemed to be complete as it stands but I now propose as the result of conversations that I have had since we took the recess to add this section: ‘ The Legislature may enact laws not inconsistent herewith, governing the form, content, manner and time of presentation of the instrument effectuating such waiver. ’ ” (Revised Record, Const. Conv. of 1938, Vol. II, pp. 1273-1286.)
As we read these remarks there was no indication that the provision was thought to require supplementary legislation before it could be effectuated. The meaning we gather is that the amendment as proposed was “ complete ” except that the Legislature was expressly permitted (not required) to perfect and refine the form in which the waiver was to be exercised.
Considering, principally, the language of the section, and conjunctively the history of the provision and the presumption obtaining in these matters, it appears to us that the courts below properly found the relevant portion of section 2 of article I of the Constitution to be self-executing.
One final word need be said. Appellant’s principal objection to the conclusion reached is that sufficient procedural detail has not been supplied by the Constitution and that so much has been left unprovided for by that section in application it would lead to “chaotic individuality”. We disagree. The basic and necessary procedural requirements have been provided. Whatevér other questions arise can be competently handled by our courts until such time as the Legislature, pursuant to its constitutional permission, assumes to act. “ The fact that a right granted by a constitutional provision may be better or further protected by supplementary legislation does not of itself prevent the provision in question from being self-executing”. (16 C. J. S., Constitutional Law, p. 144, and *693 cases there cited; see, also, 11 Am. Jur., Constitutional Law, § 75, p. 692.)
Accordingly, the order of the Appellate Division should he affirmed.
Chief Judge Conway and Judges Desmond, Dye, Fuld, Froessel and Van Voorhis concur.
Order affirmed.