## ORANGE COUNTY POLITICAL COALITION, INC. v ORANGE COUNTY ELECTIONS BOARD and ORANGE COUNTY BOARD OF COUNTY COMMISSIONERS

Case No. CI88-8114

Ninth Judicial Circuit, Orange County

July 27, 1989

### APPEARANCES OF COUNSEL

**A. Bryant Applegate,** for defendants, Orange County Election Board and Board of County Commissioners.

**James Sweeting, III,** for plaintiffs, Orange County Political Coalition.

**Mel Martinez,** for defendants, Orange County Election Board and Board of County Commissioners.

### OPINION OF THE COURT

WILLIAM C. GRIDLEY, Circuit Judge.

### *FINAL JUDGMENT*

This case came on for trial before the Court on July 14, 1989 on the Petitioner's Petition for Declaratory Judgments. Jurisdiction was alleged under F.S. 102.168, F.S. 86 and Article 5, Section 5(b) of the Florida Constitution.

The Court finds that the Petitioner's reliance on F.S. 102.168 *Contest of Election,* is clearly without merit. That statute refers only to disputes arising out of the balloting and counting process, must be brought by an unsuccessful candidate or a taxpayer, and must be filed within 10 days of the adjournment of the canvassing board. None of these criteria are met by the Petitioner.

The Court does acknowledge jurisdiction under F.S. 86 and Article 5, Section 5(b) of the Florida Constitution where the Circuit Court is given jurisdiction to declare rights, status and other equitable or legal relations.

In November 1986 the voters of Orange County adopted the Orange County Charter. That Charter directed that "a proposition calling for single member representation within the Commission districts shall be submitted to the electors of Orange County at the general election to be held in November of 1988."

Pursuant to that directive by the voters of Orange County, the Charter Review Commission prepared Proposition 1 to be put on the November 1988 ballot.

The proposition was captioned on the ballot as

## PROPOSITION 1

Single-Member County Commission Districts The explanatory statement on the ballot explained the amendment to be voted "yes" or "no" on by the question,

"Shall *the* five (5) members of the Orange County Commission of Orange County, Florida, be elected to officer from single-member districts by electors residing in each of those districts only?" Emphasis added.

Also the 1986 Orange County Charter's provisions called for the creation of a Charter Review Commission to conduct a study of all phases of county government and propose amendments and revisions to the charter. The Charter Review Commission conducted this study by independent research, interviews with public officials and political experts, and numerous public hearings and formed a proposed revision to the charter which was identified in Proposition 2.

This proposition was captioned on the ballot as

## PROPOSITION 2

Orange County Charter Revision Providing for Six (6) Single-Member Districts, County Chairman, and Other Revisions

The explanatory statement on the ballot explained the revisions to be voted "yes" or "no" on by the question,

"Shall the Orange County Charter be revised increasing the number of County Commissioners from five (5) to six(6); providing for election of each commissioner only by the voters in their commission district; creating the office of County Chairman elected by all county voters and limited to two consecutive terms; specifying legislative and executive functions, powers and duties; revising the initiative process; allowing municipal ordinances to prevail over county ordinances and making other technical and related changes?"

Propositions 1 and 2 were placed on the same ballot and each passed by a majority of the votes of essentially the same voters. The Petitioner questions the propriety of the County Commission to proclaim a victory for Proposition 2 and proceed to enact its provisions which they claim are contrary to Proposition 1. Instead, the Petitioner requests the Court declare Proposition 1 the prevailing proposition over Proposition 2 because it received more "yes" votes than Proposition 2 and its percentage of "yes" votes to "no" votes was higher than Proposition 2.

Also, Petitioner asks that Proposition 2 be declared null and void because the explanatory statement of Proposition 2 is misleading and covered more than one subject. In regard to this latter issue, the Court finds that Proposition 2 is not misleading and does not improperly cover more than one subject. It clearly relates to an extensive revision of the Orange County Charter and concisely spells out the major changes.

The first issue; however, is a Gordian's knot that the Court is only able to unravel by cutting through the actual language of the propositions and determining if the basic constitutional requirement has been met. That requirement is that the "election ballot furnish the voters notice of what they are to decide so they may intelligently cast their ballot." See *Wadham v Board of County Commissioners,* 501 So.2d 120 (Fla. 2d DCA 1987). If the voters were able to do this, then, by the same rationale, the County authorities should be able to carry such mandate into effect.

The law requires substantial compliance with applicable statutory requirements. In this respect F.S. 101.161 requires that whenever a public measure is submitted to the vote of the people the substance of

such public measure shall be printed in clear and unambiguous language followed by the word "yes" and also the word "no," and shall be styled in such a manner that a "yes" vote will indicate approval of the proposal and a "no" vote will indicate a rejection.

Each proposition, by itself, is clear and unambiguous. However, when placed on the same ballot, a problem arises as to whether the voters are being asked to vote in an inconsistent or misleading manner. The Petitioner presumes that Proposition 1 and Proposition 2 are inconsistent and that one must prevail over the other. However, the use of the word "the" in the explanatory statement of Proposition 1 may indicate that the voter is not voting to create or establish five County Commission seats (they already exist) but rather to only decide if single-member representation within the Commission districts shall occur, which is the question the 1986 Charter directed to be put on the 1988 ballot.

The Court has not found any case authority directly interpreting this issue. A similar ballot was presented in *Kobrin v Leaby*, 528 So.2d 392 (Fla. 3d DCA 1988) and the Court alluded to the fact that the placing of two inconsistent items on the same ballot may be ipso facto improper; however, it did not rule on that issue since it forbade the tabulation of votes on the grounds that the language in the proposition was misleading.

Also, in *Winterfield v Town of Palm Beach*, 455 So.2d 359 (Fla. 1984) the Florida Supreme Court applied the "single-purpose" rule. This rule calls for invalidation of a ballot whenever voters have been asked to approve more than one purpose with a single vote. The Court analyzed the rationale for this rule and determined that a violation of it would not render the election invalid per se. The Court expressed its reluctance to invalidate elections by stating "the disposition and duty of courts are to sustain popular elections whenever they have been free and fair, and it is clear that the voters have not been deprived of their right to vote, and the result has not changed by irregularity."

In the pending case, we have an inversion of the "single-purpose" rule. The voter is apparently being asked to approve one purpose with two votes. Applying the same analysis the Florida Supreme Court did on the "single-purpose" rule, this Court would not find such a ballot per se invalid, but would review the overall circumstances of the election as they have been placed before the Court and determine if the election meets the criteria set out above.

In that regard, no testimony or evidence was presented by the Petitioner and, in argument, Petitioner's attorney initially emphasized

100

that the Petitioner was not seeking to have the entire ballot invalidated. The Respondent presented background testimony from the Chairman of the Charter Review Commission and the Administrative Supervisor of the Supervisor of Elections Office and associated demonstrative evidence that is not in dispute.

The history of the development and placement on the ballot of these propositions is referred to above. The public was well informed and substantially involved in the creation of these propositions by the Charter Revision Commission. Each voter also received a copy of the proposed propositions and instructions on how to interpret the ballot. Through a combination of the voters vote on the propositions the voter is easily and clearly able to make his vote count for or against each proposition or to allow his "yes" vote for Proposition 1 to be a building block for a "yes" vote for Proposition 2.

There has been no evidence showing any voter confusion over the ballot card. Rather, the evidence has shown that the voters were afforded amply opportunity to become informed on the issues and the ballot before the election and the ballot gave them fair notice of the decision they were called on to make. It must be emphasized that the same voters voted on each proposition. Proposition 2 passed by a majority vote of 93,078 to 72,753. These 93,078 voters would logically understand that their vote on Proposition 1 would be supportive of their vote on Proposition 2. Since 93,078 votes would also be a majority vote as to the total number of votes on Proposition 1, there is no way the votes on the two propositions could be construed so as to identify an inconsistency to have occurred among the actual voters. Once again, there is no indication that anyone was mislead to believe that their "yes" votes for both propositions would mean anything other than a vote for the majority revision of the Charter as set out in Proposition 2.

Under all the circumstances presented in this case, the Court finds that there has been substantial compliance with the applicable statutory requirements and that the placing of these potentially conflicting propositions on one ballot does not require an invalidation of the election. In addition, the Court finds that the election was free and fair, no voters were deprived of their right to vote or of the full effect of their vote, and the result was not changed by any irregularity. Finally, the Court finds that the two propositions, as presented, were not inconsistent and that the passage of both propositions amounted to a choice by the electorate to enact the major revisions of the Charter that Proposition 2 stood for.

It is thereupon ORDERED AND ADJUDGED as follows:

101

1. The relief sought by Petitioner in his Complaint for Declaratory Relief is denied.

DONE AND ORDERED in Chambers at Orlando, Florida, this 27th day of July, 1989.